IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL ERIC HEBBE,

              Plaintiff,                No. CIV S-00-0306 GEB PAN P

     vs.

CHERYL PLILER, et al.,            AMENDED[1]

              Defendants.         FINDINGS & RECOMMENDATIONS

_____/

       Plaintiff is a state prison inmate proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  In his July 17, 2000, amended complaint, plaintiff claims defendants Vance and Pliler subjected him to cruel and unusual punishment in violation of the Eighth Amendment when they imposed a lock-down on plaintiff's cellblock at California State Prison Sacramento (CSP) following a large-scale riot.  Plaintiff alleged he was denied out-of-cell exercise from November 10, 1998 and March 8, 1999, or 119 consecutive days; from March 18, 1999 to April 18, 1999, or 21 consecutive days; and from September 11, 1999 to November 10, 1999, or 60 consecutive days; .  (Complaint at 13.)  Defendants move for summary judgment. Plaintiff opposes.

_____

   [1]  The March 2, 2006 Findings and Recommendations are amended to reflect that these findings and recommendations address defendants' renewed motion filed March 17, 2005.  Their December 23, 2004 motion was denied without prejudice on December 23, 2004.

1     This court takes judicial notice of court records in <u>Knight v. Pliler</u>, No. Civ S-02-

2   1299 GEB KJM.[2]

3                  SUMMARY JUDGMENT STANDARDS UNDER RULE 56

4          Summary judgment is appropriate when it is demonstrated that there exists "no

5   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

6   matter of law."  Fed. R. Civ. P. 56(c).

7               Under summary judgment practice, the moving party
                always bears the initial responsibility of informing the district court
8               of the basis for its motion, and identifying those portions of "the
                pleadings, depositions, answers to interrogatories, and admissions
9               on file, together with the affidavits, if any," which it believes
                demonstrate the absence of a genuine issue of material fact.

10

11   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

12   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

13   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

14   to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered,

15   after adequate time for discovery and upon motion, against a party who fails to make a showing

16   sufficient to establish the existence of an element essential to that party's case, and on which that

17   party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of proof

18   concerning an essential element of the nonmoving party's case necessarily renders all other facts

19   immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as

20   whatever is before the district court demonstrates that the standard for entry of summary

21   judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

22          If the moving party meets its initial responsibility, the burden then shifts to the

23   opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

24   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

25   establish the existence of this factual dispute, the opposing party may not rely upon the

26   _____

       [2] A court may take judicial notice of court records.  <u>See</u> <u>MGIC Indem. Co. v. Weisman</u>,
     803 F.2d 500, 505 (9th Cir. 1986); <u>United States v. Wilson</u>, 631 F.2d 118, 119 (9th Cir. 1980).

                                                2

1 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

2 form of affidavits, and/or admissible discovery material, in support of its contention that the

3 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

4 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

5 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

6 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

7 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

8 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

9 1436 (9th Cir. 1987).

10 　　　　　In the endeavor to establish the existence of a factual dispute, the opposing party

11 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

12 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

13 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

14 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

15 genuine need for trial.'"  Matsushita, 475 US. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

16 committee's note on 1963 amendments).

17 　　　　　In resolving the summary judgment motion, the court examines the pleadings,

18 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

19 any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

20 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

21 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

22 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

23 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

24 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

25 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

26 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

1   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

3           On February 21, 2001, the court advised plaintiff of the requirements for opposing

4   a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

5   F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, ___U.S.___, 119 S. Ct. 2392 (1999);

6   Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

7                                    ANALYSIS

8           The denial of fresh air and regular outdoor exercise constitutes cruel and unusual

9   punishment in violation of the Eighth Amendment, unless "inclement weather, unusual

10  circumstances, or disciplinary needs" make the provision of such exercise impossible.  Spain v.

11  Procunier, 600 F.2d 189, 199 (9th Cir. 1979).  In Spain, in the face of a five-month deprivation of

12  exercise, the Ninth Circuit held that "outdoor exercise [for] one hour per day, five days a week"

13  was sufficient to satisfy the Eighth Amendment.  Id; see also Allen v. Sakai, 48 F.3d 1082 (9th

14  Cir. 1995) (six-week deprivation of exercise violated Eighth Amendment, despite logistical

15  difficulties related to SHU inmates); cf. Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980)

16  (finding no Eighth Amendment violation in temporary denial of exercise during lock-down

17  instituted following incidents of gang violence, when exercise equivalent to that prescribed by

18  Spain allowed again after one month).

19          Defendants Pliler and Vance argue that they are entitled to summary judgment

20  with respect to plaintiff's Eighth Amendment claims because unusual circumstances made it

21  impossible to allow plaintiff fresh air or exercise.  Essentially, defendants argue that in the

22  aftermath of the riot, they did not have the resources to protect inmates during outside exercise

23  and to properly investigate the cause of the riot.  They suggest that, given the actual violence that

24  occurred upon implementation of a limited lockdown after approximately one month, the risk of

25  violence was too great to allow any exercise during the time periods at issue.

26  /////

1          Defendant Pliler, a California Department of Corrections (CDC) employee since

2    1968, submitted a declaration stating the November 9, 1998 riot on the main yard of Facility C

3    was one of the largest and most difficult to control in her tenure as a CDC employee.  (Decl. of

4    Cheryl Pliler, ¶ 4 (Docket No. 67, Ex. C, at 2.).)  The riot involved approximately 300 black and

5    white inmates and resulted in serious injuries to prisoners and staff.  (Id.)  Almost 120 officers

6    were required to bring the riot under control.  (Id. at ¶ 5; Decl. of Corey McKay, ¶ 17 (Docket

7    No. 67, Ex. A, at 4.).)  In response to the riot, defendant Vance (Captain of Facility C) and other

8    custodial staff decided that until the inmates responsible for the riot could be identified, releasing

9    inmates to the Facility C exercise yard posed an unreasonable risk of violence.  (Decl. of Steven

10   Vance, ¶ 27 (Docket No. 67, Ex. B at 4-5.)  Defendant Pliler approved the order to lockdown

11   Facility C and declared a state of emergency, which was approved by the Director of CDC.

12   (Decl. of Cheryl Pliler, ¶¶ 6-7.)  Consequently, approximately 1,000 inmates were subjected to

13   the cellblock lock-down.  (Decl. of Corey McKay, ¶ 7; Decl. of Steven Vance at ¶ 4.)  Plaintiff

14   was included in the population subjected to the lock-down until his transfer to a different prison

15   on November 10, 1999.  (Amended Complaint at 10.)

16          Subsequent incidents of violence did occur when prison staff began to remove

17   prisoners gradually from lock-down status.  (Decl. of Steven Vance, ¶¶ 40, 41; Decl. of Corey

18   McKay, ¶ 41.)  Defendant Pliler states in her declaration that "[f]or many weeks following the

19   riot of November 9, 1998, violent incidents continued to recur, inmates were found to be in

20   possession of weapons, and investigations disclosed that inmates were continuing to plan acts of

21   violence."  (Decl. of Cheryl Pliler, ¶ 11.)  These incidents continued through early February.

22   (Decl. of Corey McKay, ¶ 50.)

23          Defendants argue the lock-down was justified because CSPS did not have an

24   adequate number of correctional officers to provide a safe outdoor exercise environment and

25   continue to investigate the cause of the riot.  "[A]ny alternative [to lock-down] would have

26   reduced the resources necessary to investigate and identify inmates fomenting the violence and

1 | thereby increased the time necessary to transfer the problem inmates and return to outdoor

2 | exercise in the main yard and other normal programming." (Defts.' March 17, 2005 Mem. Of P.

3 | & A. In Supp. Of Mot. For Summ. J. at 15-16 (Docket No. 67-1 at 15-16.).)

4 |          Defendants do not provide any comparative facts to demonstrate that the amount

5 | or gravity of violence during the entire three month duration of the lock-down was unusual.

6 | Defendants also fail to provide any historical perspective as to what sort of violence defendants

7 | might expect after a riot similar to the riot that occurred on November 9, 1998.  Prisons are, by

8 | nature, dangerous places yet prison officials must find ways to provide prison inmates with basic

9 | human needs, such as fresh air and regular outdoor exercise.  See Spain, 600 F.2d at 199.

10 | Finally, defendants have not provided an adequate factual basis to show it could not be disputed

11 | that providing plaintiff with some exercise for almost four months was impossible, in light of

12 | past and threatened future violence, the prison's staffing resources, and the prison's physical

13 | layout and yard space.  Even if defendants had produced detailed information regarding how

14 | many officers were assigned to CSPS, their assignments during the period following the riot and

15 | detailed facts to conclusively justify the assignments, and plans showing the prison's physical

16 | plant, it is difficult to see how any question of material fact could be avoided as to whether the

17 | "unusual circumstances" exception recognized by Spain was satisfied as a matter of law.

18 | Summary judgment thus is not appropriate.

19 |          For the foregoing reasons, defendants' March 17, 2005, motion for summary

20 | judgment should be denied as to plaintiff's claim defendants Vance and Pliler subjected plaintiff

21 | to cruel and unusual punishment from November 10, 1998 and March 8, 1999, or 119

22 | consecutive days.

23 | II.  Qualified Immunity

24 |          Defendants assert that they are entitled to qualified immunity.  Government

25 | officials performing discretionary functions generally are shielded from liability for civil

26 | damages insofar as their conduct does not violate clearly established statutory or constitutional

1  rights of which a reasonable person would have been aware.  Harlow v. Fitzgerald, 457 U.S. 800,

2  818 (1982).  In determining whether a governmental officer is immune from suit based on the

3  doctrine of qualified immunity, the court must answer two questions.  The first is, taken in the

4  light most favorable to the party asserting the injury, do the facts show the officer's conduct

5  violated a constitutional right?  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A negative answer

6  ends the analysis, with qualified immunity protecting defendant from liability.  Id.  If a

7  constitutional violation occurred, a court must further inquire "whether the right was clearly

8  established."  Id.  "If the law did not put the [defendant] on notice that [his or her] conduct would

9  be clearly unlawful, . . . judgment based on qualified immunity is appropriate."  Id. at 202.  It is

10  the plaintiff's burden to show a right is clearly established.  Davis v. Scherer, 468 U.S. 183, 197

11  (1984).

12           It is undisputed that Plaintiff was denied exercise for almost four months.  When

13  taking the facts before the court in the light most favorable to plaintiff as required, unusual

14  circumstances did not make it impossible for defendants to provide plaintiff with outdoor

15  exercise during this time, thereby rendering defendants' actions in denying plaintiff outdoor

16  exercise a violation of the Eighth Amendment.  Spain v. Procunier, 600 F.2d at 199.  Before they

17  acted (or failed to act), defendants were on notice through Spain and its progeny that denying

18  plaintiff outdoor exercise absent unusual circumstances[3] making it impossible to do so amounted

19  to a violation of plaintiff's constitutional rights.  Defendants are not entitled to qualified

20  immunity.

21  III.  Failure to Exhaust

22           Defendants also filed a motion to dismiss plaintiff's claims that his Eighth

23  _____

24    [3] Defendants argue they were not on notice that their conduct was unlawful because there
is no clearly established right to outdoor exercise when a lockdown is imposed as a result of race
rioting and investigations are ongoing to identify the instigators." (Defts.' Mot. at 17.)  Thus,

25  they conclude, defendants Pliler and Vance reasonably could have believed that their conduct
was unlawful. (Id. at 17-18.)  By the time of the riot in November 1998, the law was sufficiently

26  developed such that defendants were on notice that, if possible, they had to allow plaintiff to
exercise safely for limited periods at least.  Defendants have not shown as a matter of law that
providing plaintiff safe outdoor exercise for the period of time at issue was impossible.

1  Amendment rights were violated in the March to April 1999 and September to November 1999

2  lockdowns because plaintiff failed to first exhaust his administrative remedies.  Plaintiff

3  concedes he did not exhaust available administrative remedies with respect to these claims.

4  Exhaustion pursuant to 42 U.S.C. § 1997e is mandatory and futility is not an exception.  Booth v.

5  Churner, 532 U.S. 731, 741 (2001).  A plaintiff's concession of non-exhaustion is grounds for

6  dismissal.  Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003).  Accordingly, plaintiff's claims that

7  his Eighth Amendment rights were violated in the March to April 1999 and September to

8  November 1999 lockdowns should be dismissed without prejudice.

9          IT IS ORDERED that the March 2, 2006 findings and recommendations are

10  vacated.

11          Accordingly, IT IS HEREBY RECOMMENDED that:

12          1.  Defendants' March 17, 2005 motion for summary judgment be denied as to

13  plaintiff's claim defendants Vance and Pliler subjected plaintiff to cruel and unusual punishment

14  from November 9, 1998 until March 8, 1999.

15          2.  Defendants' March 17, 2005 motion to dismiss be granted; plaintiff's claims

16  that his Eighth Amendment rights were violated in the March to April 1999 and September to

17  November 1999 lockdowns be dismissed without prejudice.

18          These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

23  /////

24  /////

25  /////

26  /////

1   failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  Martinez v. Ylst, 95 1 F.2d 1153 (9th Cir. 1991).

3   DATED:  March 6, 2006.

4

5                                                    _____
                                                     UNITED STATES MAGISTRATE JUDGE
6

7

8   /1; hebb0306.msja