IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL ERIC HEBBE,

        Plaintiff,                  No. 2:00-cv-0306 EFB P

    vs.

CHERYL PLILER, et al.,

<u>ORDER</u>

        Defendants.

_____/

The case was before the undersigned on January 9, 2013, for hearing on defendants' motion for summary judgment.[1] Dckt. No. 204. Attorney Robert D. Hunt appeared at the hearing on behalf of plaintiff; attorney Michael Gregory Lee appeared on behalf of defendants. As stated on the record, and for the reasons provided below, defendants' motion is denied.

**I.   Background**

The initial complaint in this action was filed on February 14, 2000 and was amended on July 17, 2000. Dckt. Nos. 1, 8. Plaintiff alleged, in relevant part, that defendants Pliler and Vance, employees at California State Prison, Sacramento ("CSP-Sac"), had (1) denied him

---

[1] Plaintiff is a state prisoner proceeding through counsel in an action brought under 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1) and is before the undersigned pursuant to the parties' consent. E.D. Cal. Local Rules, Appx. A, at (k).

1

outdoor exercise, (2) denied him access to the courts, and (3) forced him to choose between library time and yard time. The previously assigned magistrate judge found that plaintiff had stated a cognizable claim based on the denial of outdoor exercise and recommended that the other two claims be dismissed. Dckt. No. 27. That recommendation was adopted by the then assigned district judge and the claims of denial of access to the courts and being forced to choose between exercise or law library access were dismissed. Dckt. No. 31. On September 25, 2007, the denial of exercise claim proceeded to a jury trial before the undersigned and the jury returned a verdict for defendants. Dckt. Nos. 142-145. Judgment was entered. Dckt. No. 151.

Plaintiff subsequently appealed the dismissal of the access to courts claim and the choosing between yard time and library time claim. Dckt. No. 155. On August 2, 2010, the U.S. Court of Appeals for the Ninth Circuit reversed and remanded, finding that both of these claims were cognizable. Dckt. No. 161, 166 (Nov. 19, 2010 amended opinion).

This action now proceeds on the Second Amended Complaint, in which plaintiff again asserts claims that defendants Vance and Pliler denied him access to the courts, and forced him to choose between library time and yard time. Dckt. No. 179. Before the court is defendants' October 31, 2012 motion for summary judgment. Dckt. No. 204. Plaintiff opposed the motion, Dckt. No. 208, and defendants filed a reply. Dckt. No. 211. Defendants contend that there is no genuine dispute of material fact and that they are entitled to qualified immunity. As discussed below, genuine issues of material fact preclude summary judgment.

**II.   Plaintiff's Motion to Strike**

In addition to opposing defendants' summary judgment motion, plaintiff moves to strike (Dckt. No. 208-40) the declaration of D. Hamad (Dckt. No. 204-2), which defendants filed in support of their motion.[2] In the Hamad declaration, Hamad states that she has supervised the law

---

[2] Plaintiff also contends that defendants destroyed relevant evidence after the trial in 2007 even though two of plaintiff's claims were still pending on appeal. Dckt. No. 208-1 at 2-4. At the hearing on defendants' motion, the court informed plaintiff that any motion based on defendants' alleged spoliation of evidence must be properly noticed for hearing and must also

1  library at CSP-Sac since 2000, and describes the prison's preferred legal user ("PLU") status
2  policy as it existed between 1998 and 2000. Plaintiff moves to strike the declaration because: (1)
3  Hamad was never identified as a person likely to have discoverable information as required by
4  Federal Rule of Civil Procedure 26(a)(1); (2) Hamad lacks personal knowledge of the relevant
5  facts; and (3) certain statements made therein are irrelevant.

6  Although defendants submitted a reply brief, they have failed to respond to plaintiff's
7  motion to strike. At the hearing, defense counsel essentially conceded that Hamad was not
8  identified in defendants' initial disclosures. Defense counsel argued that defendants could not
9  have anticipated the need to produce any PLU policy-related information at the time of initial
10 disclosures, which were made on February 13, 2012. *See* Dckt. No. 208-38. Evidence of the
11 PLU policy plainly relates to plaintiff's claims, both of which concern plaintiff's ability to access
12 the prison law library. *See* Dckt. No. 184-1 at 9 ("Introduction" section of Defendants' August
13 22, 2011 Motion for Judgment on the Pleadings, summarizing plaintiff's claims). It is difficult
14 to understand why in February of 2012, defendants could not have anticipated the need to
15 produce PLU policy-related information and defendants have not provided any persuasive
16 explanation as to why that would be the case. As for plaintiff's personal knowledge objection to
17 the Hamad declaration, defense counsel represented at the hearing that Hamad has personal
18 knowledge of the PLU policy described in her declaration because she was a prison employee as
19 of 1998 and was responsible for enforcing the PLU policy. The Hamad declaration itself,
20 however, does not state that Hamad was a CSP-Sac employee prior to 2000 or otherwise lay a
21 foundation for her knowledge of a prison policy that existed prior to 2000.

22 For these reasons, plaintiff's objections to the Hamad declaration are well-taken.
23 ////
24

25 request a particular form of relief or sanction. On March 13, 2013, plaintiff filed a motion for
   sanctions against defendants for spoliation of evidence. Dckt. No. 216. Spoliation issues,
26 therefore, will be addressed at the hearing on plaintiff's motion.

3

Ultimately, however, Hamad's assertions regarding the intricacies of the PLU policy do not preclude summary judgment, as set forth below. Plaintiff's motion to strike the Hamad declaration is therefore denied as unnecessary.

### III.     Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

////

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

////

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

////

////

6

**IV. Discussion**

Plaintiff seeks redress for civil rights violations he allegedly suffered while incarcerated at CSP-Sac. The defendants, Warden Cheryl Pliler and Captain Steven Vance, were officials at the prison. Plaintiff alleges two claims under 42 U.S.C. § 1983: (1) that they deprived him of his right to court access during prison lockdowns, and (2) that they impermissibly forced him to choose between two constitutionally protected rights—the right to court access and the right to exercise—when not on lockdown. Defendants argue they are entitled to summary judgment (1) because of Eleventh Amendment immunity, (2) because there are no genuine disputes for trial, and (3) because they are entitled to qualified immunity. As stated on the record, summary judgment is not appropriate on any of these grounds.

**A. Eleventh Amendment**

First, defendants have not shown that they are entitled to Eleventh Amendment immunity. The Eleventh Amendment bars a plaintiff's claims for damages against the state, its agencies or its officials in their official capacities, unless the state waives its immunity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Section 1983 does not abrogate the states' Eleventh Amendment immunity from suit. *See Quern v. Jordan*, 440 U.S. 332, 344-45 (1979).

"[T]he distinction between official capacity suits and personal-capacity suits is more than 'a mere pleading device.'" *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (quoting *Will*, 491 U.S. at 71). That is, state officers are not absolutely immune from personal liability under § 1983 "solely by virtue of the 'official' nature of their acts." *Id.* at 30-31 (rejecting view that lawsuits, "although brought against state officials in their personal capacities, were in substance actions against the [state] and therefore barred by the Eleventh Amendment"). Here, the operative complaint names the two defendants in their personal capacities and identifies the specific acts of the defendants that give rise to plaintiff's claims. Regardless of whether those acts are viewed as "official" in nature, the Eleventh Amendment does not bar plaintiff's suit against defendants in

7

their personal capacities. *See Hafer*, 502 U.S. at 25 (explaining that unlike an official capacity suit, which is a means of pleading an action against a government entity, a personal capacity suit seeks to impose individual liability upon a government officer).

**B. Genuine Disputes**

Second, there are triable issues of fact as to both of plaintiff's claims. The facts regarding plaintiff's access to the courts claim are as follows: Plaintiff's court-appointed attorney filed an appeal from plaintiff's criminal conviction. While that appeal was pending, there were two lockdowns at CSP-Sac. During the first lockdown, plaintiff's lawyer filed a brief stating that there were no legitimate issues for appeal, and withdrew from the case.[3] The appellate court then granted plaintiff 30 days–until December 18, 1998–to file a pro se brief. Plaintiff did not file the brief, and claims that he was unable to do so because during the lockdown, he was confined to his cell at almost all times, and could not leave to visit the law library. On April 9, 1999, the appellate court affirmed plaintiff's conviction and sentence.

Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."[4] *Id.* Inmates do not have "an abstract, freestanding right to a law library or legal assistance," and "cannot establish relevant actual injury simply by establishing that [the] prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. The right

---

[3] The attorney's "no issue" brief was filed pursuant to *People v. Wende*, 25 Cal. 3d 436 (1979).

[4] Prisoners also have a right "to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials." *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011). An inmate alleging a violation of this right must show that the deprivation actually injured his litigation efforts, in that the defendant hindered his efforts to bring, or caused him to lose, an actionable claim challenging his criminal sentence or conditions of confinement. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002).

8

to litigation assistance "is limited to the tools prisoners need in order to attack their sentences, [either] directly or collaterally, and in order to challenge the conditions of their confinement." *Silva*, 658 F.3d at 1102 (quotations omitted). The right to legal assistance is limited to the pleading stage. *Id.*

Defendants contend that plaintiff's access to the courts claim fails because plaintiff succeeded in filing a notice of appeal, and plaintiff's right to court access did not extend beyond this "pleading stage" to the filing of a pro se appellate brief. Defendants' position, however, cannot be reconciled with the earlier order from the Court of Appeals in this action, which found the following:

> Hebbe's claim that he was frustrated in his desire to use the law library facilities to research the pro se brief that he wished to file on direct appeal of his state court conviction plausibly alleges exactly the type of "actual injury" discussed in *Lewis*. . . . Hebbe unquestionably had a right to use the legal materials available in the prison to research which issues he might address in that brief. The fact that Hebbe's former attorney had filed a *Wende* brief did not affect his right to file his own brief or his right to use the prison library facilities to research that brief. Nor did the former attorney's filing of the *Wende* brief necessarily demonstrate that there were no nonfrivolous claims that Hebbe might raise on direct appeal. . . . Hebbe thus had a right to use the prison law library to research the constitutional, jurisdictional, or other issues he might raise on appeal. . . . If true, the facts Hebbe alleges would establish that he was impermissibly denied the opportunity to appeal his conviction, which denial would fulfill *Lewis's* 'actual injury' requirement.

*Hebbe v. Pliler*, 627 F.3d 338, 343 (9th Cir. 2010). Moreover, the Ninth Circuit, in recognizing that the right to litigation assistance is limited to the pleading stage, clarified that for purposes of such a claim, "the 'pleading stage' encompasses the preparation of a complaint *and* the preparation of any filings necessary 'to rebut the State's arguments when a court determines that a rebuttal would be of assistance." *Silva*, 658 F.3d at 1102 n. 9 (9th Cir. 2011) (quoting *Cornett v. Donovan*, 51 F.3d 894, 899 (9th Cir. 1995). Here, plaintiff's pro se appellate brief – a rebuttal of sorts to his attorney's *Wende* brief – falls within the meaning of *Silva*'s definition of the pleading stage.

////

Accordingly, summary judgment as to plaintiff's access to the courts claim cannot be granted based on the fact that plaintiff succeeded in filing a notice of appeal.[5]

Defendants also contend they are entitled to summary judgment because plaintiff could have accessed the law library and legal resources during the lockdown, but instead, did nothing to pursue that access. As discussed at the hearing, much of defendants' argument centers on speculation over what plaintiff could or should have done to pursue his appeal during the lockdown, such as requesting help from staff or other inmates, requesting appropriate relief from the courts, or consulting CDCR regulations or handbooks or seeking PLU status or using the paging system. The disputes between plaintiff and defendants over whether any meaningful access was truly available presents factual issues that must be decided by a jury. *See Bounds*, 430 at 823 (stating that *meaningful* access to the courts "is the touchstone"). Here, defendant Pliler testified at her deposition that inmates with PLU status were rarely escorted to the law library during a lockdown. Dckt. No. 208-4 at 101:10-102:6, 115:8-13. As for the paging system at issue, the Ninth Circuit previously described it as offering only "extremely limited access to legal materials." *Hebbe*, 627 F.3d at 340 & n.2. Thus, plaintiff's failure to make use of either the PLU or paging systems at CSP-Sac while his appeal was pending do not entitle defendants to summary judgment. Because there are genuine disputes as to whether defendants failed to provide plaintiff with meaningful library access while on lockdown, summary judgment on plaintiff's access to the courts claim is denied.

Plaintiff's second claim is that, even when not on lockdown, defendants violated his Eighth Amendment rights by impermissibly forcing him to choose between the right to court access and the right to exercise. *See* Dckt. No. 179 ¶ 30 ("Defendants were responsible for and

---

[5] In *Silva*, the court drew a distinction between cases involving the right to litigation assistance and the right to actually litigate claims without active interference from prison officials. Defendants, in relying on *Silva*'s limitation of "assistance" claims to the pleading stage, contend that this case is an "assistance" case and not an "interference" case. Plaintiff does not agree with this characterization of his claim. Resolution of the distinction, however, is not necessary for ruling on defendants' motion.

10

participated in the implementation of policies forcing Hebbe to choose between his right to court access and his right to outdoor exercise . . . ."); *id.* ¶ 32 ("During the . . . eight months Hebbe spent not on lockdown, he pursued law library time at every available opportunity, to the exclusion of outdoor exercise."). The Court of Appeals previously recognized this claim as cognizable under the Eighth Amendment because "an inmate cannot be forced to sacrifice one constitutionally protected right solely because another is respected." *Hebbe*, 627 F.3d at 343-44 (quoting *Allen v. City and County of Honolulu*, 39 F.3d 936, 940 (9th Cir. 1994)).

Defendants contend that plaintiff lacks standing to pursue this claim because, under *Lewis*, 518 U.S. at 351, inmates have "no absolute right to sit in a law library and do generalized research."[6] Dckt. No. 204-1 at 7. This generalized standing argument misses point. As the Court of Appeals previously explained, plaintiff has "sufficiently alleged that prison officials violated his Eighth Amendment rights because they forced him to choose between his constitutional right to exercise and his constitutional right of access to the courts . . . ." *Hebbe*, 627 F.3d at 344. In finding that plaintiff had shown that he was forced to so choose, the court reasoned that under *Lewis*, an inmate's constitutional right to use the law library is predicated upon the pursuit of an "arguably actionable" legal claim. *Id.* The court found that plaintiff had alleged he was pursuing one or more such claims:

> Hebbe wished to use the law library to research and file his § 1983 complaint. The prison officials do not dispute that Hebbe's § 1983 action involves one or

---

[6] Defendants also argue that they are entitled to summary judgment on this claim because the court must defer to the judgment of prison officials in deciding how to allocate time for law library access by inmates. Dckt. No. 204-1 at 7-8 (citing *Lewis*, 518 U.S. at 361-63). Aside from conclusory references to "budgetary limitations" and an intent to be "equitable," defendants do not submit any evidence regarding the decision-making process behind the policies at issue in this case, or otherwise show that the decisions regarding inmate access to library facilities were supported by legitimate penological interests. Defendants' reliance on mere argument is "wholly insufficient" to satisfy their burden on summary judgment. *See Walker v. Sumner*, 917 F.2d 382, 386 (9th Cir. 1990) ("Prison authorities cannot rely on general or conclusory assertions to support their policies. Rather, they must first identify the specific penological interests involved and then demonstrate both that those specific interests are the actual bases for their policies and that the policies are reasonably related to the furtherance of the identified interests. An evidentiary showing is required as to each point.").

11

> more non-frivolous, "arguably actionable" legal claims—nor could they, given that one of those claims, Hebbe's claim that his Eighth Amendment rights were violated when he was denied all out-of- cell exercise during the seven month period that he was held on lockdown, was tried to a jury. In addition to that claim, Hebbe had other nonfrivolous claims to research as well. The two counts that are now on appeal before us are certainly not frivolous. Hebbe also wished to use the law library to research the state habeas petition that he filed in Sacramento Superior Court, *a purpose that falls squarely under Lewis's definition of nonfrivolous legal research.*

*Id.* (emphasis added). Not only do defendants fail to show the absence any triable issue of fact, they do not dispute the above-summarized allegations on summary judgment. As stated in plaintiff's opposition, and as emphasized at the hearing, "[a] prisoner asserting an *Allen* claim only has to establish that the forced choice deprived him of one of the relevant constitutional rights; he does not have to establish that it deprived him of both." Dckt. No. 208 at 16. Plaintiff's claim, predicated on *Allen*, is that by being forced to choose between two constitutional rights (the library and exercise), he was deprived of his right to exercise. *See id.* at 7 ("the prison's policy effectively eliminated Hebbe's exercise time for at least five months when he was not on lockdown" and "[t]hat deprivation of his exercise was so severe as to constitute cruel and unusual punishment."). There is no dispute that plaintiff was forced to choose between these two rights.

Defendants' argument that plaintiff did not sustain an access to the courts injury within the meaning of *Lewis* again misses the point. *See* Dckt. No. 204-1 at 8 (arguing that plaintiff's claim fails because "no case requiring prosecution or research so that he could prosecute it, was damaged, dismissed, or decided adversely to [plaintiff] because [plaintiff] had to stand in line to use the law library."). The argument appears to be that plaintiff cannot show any injury as a result of having to choose between library time and yard time. But plaintiff's opposition establishes the existence of triable issues of fact as to whether his inability to exercise caused him physical injuries. Because there are genuine disputes as to whether defendants violated plaintiff's Eighth Amendment rights in forcing him to choose between two constitutional rights, summary judgment on this claim is also denied.

### C. Qualified Immunity

Finally, defendants argue that they are entitled to qualified immunity. Qualified immunity protects government officials from liability for civil damages where a reasonable person would not have known their conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). In determining whether the doctrine of qualified immunity provides a government officer protection, a court must make two inquires: 1) do the facts alleged show that the officer violated a constitutional right; and 2) was the constitutional right well established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, (2009) (courts have discretion to decide which of the two *Saucier* prongs to address first). A plaintiff invokes a "clearly established" right when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 40 (1987).

Whether the defendant violated a constitutional right and whether the right was clearly established at the time of the violation are pure legal questions for the court. *See Phillips v. Hust*, 477 F.3d 1070, 1079 (9th Cir.2007). However, even where a right was clearly established, the question remains whether the defendant's actions violated such right. That question may or may not turn on facts which are in dispute. "If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir.2003); *see also Martinez v. Stanford*, 323 F.3d 1178, 1183–85 (holding that the district court erred by granting summary judgment where there were genuine issues of material fact regarding the reasonableness inquiry of the second Saucier prong).

As discussed at the hearing, a prisoner's right to court access, and his right to be free from having to choose between his right to court access and his right to outdoor exercise, were clearly established as of 1998. *See Bounds*, 430 U.S. 817 (1977) ("the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the

13

preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); *Allen v. City & County of Honolulu*, 39 F.3d 936, 940 (9th Cir. 1994) ("During the time Allen was incarcerated in SHU, an inmate's right to outdoor exercise and his right to law library access both were clearly established. Since a reasonable prison official should have known that he could not deprive Allen of one simply because he permitted Allen to exercise the other, [defendant] is not entitled to qualified immunity at the summary judgment stage.").

Defendants contend they are entitled to qualified immunity because their library usage policies were "designed to maximize available prison resources by ensuring that inmates with the greatest need had priority use of limited resources." Dckt. No. 204-1 at 10. They contend that under their policies, inmates in need could meet rapidly approaching court deadlines. *Id.* They also concede that inmates who did not face such deadlines had to use the library during yard times. *Id.* According to defendants this "common sense, rational approach, does not violate the constitution." *Id.*

Plaintiff claims that it was defendants' policies that prevented him from exercising his clearly established rights. He claims defendants' policies prevented him from accessing the prison library to prepare his pro se appellate brief while on lockdown, and also forced him to choose between library time and exercise while not on lockdown. As set forth above, there are genuine issues for trial as to each of these claims. Viewing the evidence in the light most favorable to plaintiff, a jury could conclude that it was not reasonable for defendants to believe that it was lawful to deprive plaintiff of meaningful library access to prepare his pro se appellate brief. Though defendants contend that the prison's policies regarding library access are entitled to deference, they do not submit any evidence to support that contention, or to otherwise show that the prison's restrictions on the law library and legal resources, regardless of whether plaintiff was or was not on lockdown, were reasonably related to a legitimate penological interest. Additionally, *Allen* plainly states that "[a]n inmate should not have to forego outdoor

recreation to which he would otherwise be entitled simply because he exercises his clearly established constitutional right of access to the courts." *Allen*, 39 F.3d at 939. The specific circumstances regarding how defendants' library policies affected plaintiff's library access, and whether defendants were justified in forcing a choice between constitutional rights upon plaintiff, remain "factual issues to be developed at trial." *Id.* at 940; *see also id.* ("Since a reasonable prison official should have known that he could not deprive [plaintiff] of one [right] simply because he permitted [plaintiff] to exercise the other, [defendants are] not entitled to qualified immunity at the summary judgment stage."). For these reasons, defendants have not shown they are entitled to qualified immunity.

**V.    Order**

Accordingly, IT IS HEREBY ORDERED that defendants' motion for summary judgment (Dckt. No. 204) is denied.

Dated: April 30, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE